**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| **GIL-PAULINO, Jose Ramon,**<br>             Petitioner,<br><br>        v.<br>**KRISTI NOEM**, Secretary of the United States Department of Homeland Security, in her official capacity; **U.S. Department of Homeland Security**; **TODD LYONS**, Acting Director and Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement, in his official capacity; **U.S. Immigration and Customs Enforcement**; **GARRETT RIPA**, Field Office Director for ICE's Enforcement and Removal Operation's ("ERO") Miami, Florida Field Office, in his official capacity; **SHEREA GREEN,** Director of the Corrections and Rehabilitation Department of Miami-Dade County, Florida, in her official capacity; **SIRCE OWEN**, Acting Director of EOIR, in her official capacity; **Executive Office for Immigration Review**,<br>             Respondents. | **Case No.**<br><br>**Agency No. A208 175 862**<br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241** |

**INTRODUCTION**

The federal government is unlawfully detaining Petitioner Jose Ramon Gil-Paulino at "Alligator Alcatraz" in the middle of the Florida Everglades.[1] Despite having resided in the United States since 2017, DHS insists that he is an "applicant for admission" under § 1225 (a)(1) and therefore subject to mandatory detention under § 1225 (b)(2)(A). Following a July 10, 2025 hearing before an Immigration Judge (IJ) in Florence, Arizona, Petitioner was found to pose no risk of danger if released and granted release upon the posting of a $10,000 bond. Nonetheless, DHS filed an appeal and invoked the "automatic stay" set forth in 8 C.F.R. § 1003.19(i)(2) that allows prosecutors to functionally override the IJ's bond determination.

But the government's justification for invoking the automatic stay is completely off-base. Petitioner is ***not*** subject to mandatory detention under 8 U.S.C. § 1225(b)(2), as the government has repeatedly asserted. Rather, he was arrested and detained under 8 U.S.C. § 1226, as set forth in DHS's own Notice to Appear (NTA).[2] Indeed, § 1225(b)(1)(A)(iii)(II) specifically excludes from "this clause" anyone who "has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph."

In fact, the IJ specifically rejected the government's Section 1225 argument in its written order granting Petitioner bond.[3] Contrary to the government's entire argument, there is simply no legal basis for Petitioner's continued detention. However, despite the IJ order finding him eligible for release and granting bond because he poses no flight risk or danger, Petitioner faces continued detention with no end

---

[1]  The facility was originally referred to as the "Collier Dade Transition and Training Detention Center," but Respondents have officially renamed it "Alligator Alcatraz." *See* Ana Ceballos, *Alligator Alcatraz Is No Nickname. It's Detention Camp's Official Name*, Tampa Bay Times, Jul. 1, 2025, last accessed 8/25/2025
https://www.tampabay.com/news/florida/2025/07/01/alligator-alcatraz-is-no-nickname-its-detention-camps-official-name

[2]  *See,* Exhibit 1, Notice to Appear (NTA).

[3]  *See,* Exhibit 2 – Order Granting Bond.

in sight.

At some point after the bond hearing, DHS transferred Petitioner to "Alligator Alcatraz" and since then, Petitioner's counsel has been unable to schedule any legal telephone calls, video conference or visits with Petitioner.  Accordingly, Petitioner files this writ of habeas corpus to vindicate his rights to due process and to seek immediate relief from his continued arbitrary detention.

## JURISDICTION & CUSTODY

1.      Petitioner Jose Ramon Gil-Paulino is in the physical custody of Respondents and Immigration and Customs Enforcement (ICE), an agency within the Department of Homeland Security.

2.      Petitioner is currently detained at "Alligator Alcatraz" in the middle of the Florida Everglades and is under the direct control of Respondents and their agents.

3.      This action arises under the Constitution of the United States and 8 U.S.C. § 1101 et seq.

4.      This Court has jurisdiction under 28 U.S.C. § 2241, Art. I § 9, cl. 2 of the United States Constitution, 28 U.S.C. § 1331, and the common law. This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., and the All Writs Act, 28 U.S.C. § 1651.

5.      Congress has preserved judicial review of challenges to immigration detention. See Jennings v. Rodriguez, 583 U.S. 122, 130-131 (2018) (holding that 8 U.S.C. §§ 1226(e) and 1252(b)(9) do not bar review of challenges to prolonged immigration detention).

6.      The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief.  28 U.S.C. § 2243. If an order

to show cause is issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

7.      The Court has inherent power to release the petitioner pending review of his petition. *See Martin v. Solem*, 801 F.2d 324, 329 (8th Cir. 1986).

## VENUE

8.      Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-500 (1973), venue lies in this Court, the federal judicial district in which Petitioner is currently is in custody.

9.      Venue is also properly in this Court pursuant to 18 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States.

## PARTIES

10.      Petitioner is a forty-nine-year-old citizen of the Dominican Republic currently held by Respondents at the immigration detention facility known as "Alligator Alcatraz" in the middle of the Florida Everglades.

11.      Respondent Kristi Noem is the Secretary of the U.S. Department of Homeland Security ("DHS"). In this capacity, Respondent Noem is a legal custodian of Petitioner. Respondent Noem is sued in her official capacity.

12.      Respondent DHS is a federal executive agency responsible for, among other things, enforcing federal immigration laws and overseeing lawful immigration to the United States. Respondent DHS is a legal custodian of Petitioner.

13.      Respondent Todd M. Lyons is Acting Director and Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement ("ICE"). Respondent Lyons is responsible for ICE's policies, practices, and procedures, including those relating to the detention

of immigrants during their removal procedures. Respondent Lyons is a legal custodian of Petitioner. Respondent Lyons is sued in his official capacity.

14.     Respondent ICE is a federal law enforcement agency within DHS. Respondent ICE is responsible for the enforcement of immigration laws, including the detention and removal of immigrants. Respondent ICE is a legal custodian of Petitioner.

15.     Respondent Garrett Ripa is Field Office Director for ICE's Enforcement and Removal Operation's ("ERO") Miami, Florida Field Office. Respondent Ripa is a legal custodian of Petitioner. Respondent Ripa is sued in his official capacity.

16.     Respondent Sherea Green is the Director of the Corrections and Rehabilitation Department of Miami-Dade County, Florida. Respondent Green is a legal custodian of Petitioner. Respondent Green is sued in her official capacity.

17.     Respondent EOIR is a federal agency within the U.S. Department of Justice. Respondent EOIR is responsible for the administration of immigration courts, and acceptance of forms and petitions related to adjudication of immigration claims, as well as motions for bond.

## STATEMENT OF FACTS

18.     Petitioner was born on November 29, 1975 in the Dominican Republic and retains a Dominican passport valid through 2031.[4]

19.     On May 20, 2025, Petitioner was taken into custody in Puerto Rico, during an immigration enforcement operation, and DHS issued the respondent a Notice to Appear (NTA) charging him with inadmissibility pursuant to INA § 212(a)(6)(A)(i) and INA § 212(a)(7)(A)(i)(I).[5]

---

[4]  *See,* Exhibit 3 – Petitioner's Bond Hearing Exhibits.

[5]  *See,* Exhibit 1 – Notice to Appear (NTA).

20.     Respondents detained Petitioner at the Florence Detention Center in Arizona after his arrest where he was placed in removal proceedings under 8 U.S.C. § 1229a.

21.      On July 10, 2025, a custody redetermination hearing was held in Florence, Arizona, where Petitioner submitted evidence, including a copy of his passport, an affidavit of support from a friend, lease agreement, electricity bill, vehicle title paperwork, a personal statement, and character letters from friends.[6] DHS submitted a Form I-213, Record of Inadmissible/Deportable Alien, which contained the respondent's prior immigration history.[7]

22.     The IJ issued a preliminary order on July 10, 2025 granting release upon the posting of a $10,000.00 bond and DHS filed a Form E-43, Automatic Stay, that same day in order to keep Petitioner from being released.

23.     In the written order dated July 28, 2025, the IJ found that Petitioner posed no danger to property or persons if released and held that a $10,0000.00 bond would mitigate any flight risk.[8]

24.     That order also stated that:

> . . . the Department argues that the Respondent is subject to mandatory detention under INA section 235(a). However, no facts or evidence have been presented by either party to establish that the Respondent falls under the Board's ruling in *Matter of Q. Li*, 26 I&N Dec. 66 (BIA 2025), because he was not apprehended arriving in the United States. Rather the Respondent was detained after being present in the United States for longer than two years. Therefore, the Respondent is properly detained under INA section 236(a), and has never been detained under INA section 235. *See also* INA section 235(b)(1)(A)(iii)(II).

7/28/2025 Order at page 2.

---

[6]  *See,* Exhibit 3 – Petitioner's Bond Hearing Exhibits.

[7]  *See,* Exhibit 4 – Respondent's Bond Hearing Exhibits.

[8]  *See,* Exhibit 2 – Order Granting Bond.

25.     DHS filed a Form EOIR43 Stay of Release on July 10, 2025 and a Notice of Appeal to BIA on July 24, 2025.[9]

26.     DHS filed its Brief on Appeal at the BIA on August 15, 2025.[10]

27.     Petitioner filed a Motion To Lift Automatic Stay Imposed Under 8 C.F.R. § 1003.19(i)(2) at the BIA on August 21, 2025.[11]

28.     Petitioner filed his Response Brief on Appeal at the BIA on August 21, 2025.[12]

29.     Briefing is now complete at the BIA.

30.      Petitioner has exhausted any and all administrative remedies to the extent feasible.

31.     DHS appears to have transferred Petitioner to the immigration detention facility now known as "Alligator Alcatraz" in the middle of the Florida Everglades. Petitioner's counsel has been unable to verify exactly when this transfer occurred, as no information for Petitioner now appears in the ICE Detainee Locator system or in the Florida Dept. of Corrections Locator.

32.     Typically, the location of and contact details for immigrant detainees are available on ICE's Online Detainee Locator System at  https://locator.ice.gov/odls/#/search

33.     A user first may enter the person's A-number (a unique identification number provided by ICE to each individual in its system) and country of birth, or provide the person's name, country of birth, and date of birth. The online locator should then provide the name of the facility where the person is detained, with a link to a webpage that provides information on how to contact the facility and communicate with detainees.

---

[9]  *See,* Exhibit 5 - Notice of Appeal to BIA.

[10] *See,* Exhibit 6 – DHS Brief on Appeal.

[11]  *See,* Exhibit 7 – Petitioner's Motion To Lift Automatic Stay.

[12] *See,* Exhibit 8 – Petitioner's Response Brief on Appeal.

34.     As of the date of filing of this Petition, no information for Petitioner Jose Ramon Gil-Paulino, Agency No. A208 175 862 appears in the ICE Detainee Locator system.

35.     Nor does any information for Petitioner appear in the Florida Dept. of Corrections Locator system, located at Florida Department of Corrections Inmate Search

36.     Neither DHS nor the Florida Dept. of Corrections have provided publicly available information regarding attorney-client access for detainees held at Alligator Alcatraz.

37.     Respondents have provided no information to detainees, attorneys, or the public to explain how detainees held at the facility can communicate with counsel, whether in person at the facility, on the phone, or via video.

38.     Since being detained at Alligator Alcatraz, Petitioner has had only one telephone call with his legal counsel on September 1, 2025.

39.     Respondents have unreasonably restricted immigrant detainees' access to counsel at Alligator Alcatraz. "Regulations and practices that unjustifiably obstruct the availability of professional representation . . . are invalid." *Procunier v. Martinez*, 416 U.S. 396, 419 (1974), overruled on other grounds by *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989). Their intrusion on detainees' confidential communication with counsel undermine the attorney-client privilege, the "oldest of the common-law privileges." *Diamond Resorts U.S. Collection Dev.. LLC. v. U.S. Consumer Att'ys*, 519 F. Supp. 3d 1184, 1197 (S.D. Fla. 2021) (*citing Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981)).

## LEGAL FRAMEWORK

40.     "'It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings.'" *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)). "Freedom from imprisonment—from government

custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause protects in immigration cases. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

41.     Due process thus requires "adequate procedural protections" to ensure that the government's asserted justification for a noncitizen's physical confinement "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (internal quotation marks omitted).

42.     In the immigration context, the Supreme Court has recognized only two valid purposes for civil detention: to mitigate the risks of danger to the community and to prevent flight. *Id.; Demore*, 538 U.S. at 528. The government may not detain a noncitizen based on any other justification.

43.     Congress has granted the Attorney General discretion to decide whether to detain or release certain noncitizens pending a removal decision. *See* 8 U.S.C. § 1226(a). The Attorney General has delegated that authority to IJs. 8 C.F.R. §§ 1003.19, 1236.1.

44.     The "automatic stay" provision of 8 C.F.R. § 1003.19(i)(2) prevents noncitizens from posting bond and being released even where IJs have rejected DHS's unlawful reinterpretation of § 1225(b)(2) and have granted bond.

45.     DHS has formally adopted this new position on mandatory detention for noncitizens who have been residing in the United States even though federal courts have rejected this exact conclusion. For example, on July 28, 2025, the U.S. District Court for the Central District of California, Eastern Division, issued a Temporary Restraining Order (TRO) enjoining DHS from categorically denying initial § 236(a) bond hearings to respondents in § 240 proceedings under

DHS's July 8, 2025 7/8/25 DHS Guidance Notice. *See, Lazaro Maldonado Bautista et al. v. Santacruz, Jr., et al.*[13]

46. On August 29, 2025, the U.S. District Court for the District of Minnesota, issued an Order for Injunctive Relief against four of the same Respondents named in this case, enjoining them from denying that petitioner – who had been present in the U.S. for ten years - a bond hearing. That Court found that he "more clearly falls under a plain text reading of section 1226(a). As other courts have observed, "[t]aken together these two statutes principally govern the detention of non-citizens pending removal proceedings—section 1225 governs detention of noncitizens 'seeking admission into the country,' whereas section 1226 governs detention of non-citizens 'already in the country.'" *Francisco T. v. Bondi, et al.,* Case No. 0:25-cv-03219-JMB-DTS [CM/ECF Doc. 17] Filed 08/29/25, Page 7-8. [14]

47. On August 14, 2025, the U.S. District Court for the District of Nebraska issued a Memorandum and Order granting the Petitioner's immediate release and her writ of habeas corpus on the ground "the government is unlawfully detaining Petitioner in violation of her Due Process rights by invoking a uniliteral automatic stay of the bond a duly appointed Immigration Judge determined was appropriate." [15]  *See, Floribertha Mayo Anicasio, Petitioner v. Jerome Kramer,*

---

[13]  *See* Exhibit 9, Temporary Restraining Order entered 7/28/2025 in *Lazaro Maldonado Bautista et al. v. Santacruz, Jr., on behalf of themselves and others similarly situated, et al.*, Plaintiffs-Petitioners, v. *Kristi Noem, Secretary, Department of Homeland Security, et al.*, Defendants-Respondents, U.S. District Court for the Central District of California, Eastern Division, Case No. 5:25-cv-01873-SSS-BFM.

[14]  *See* Exhibit 10, Restraining Order entered 8/29/2025 in *Francisco T. v. Bondi, et al.,* Case No. 0:25-cv-03219-JMB-DTS, [CM/ECF Doc. 17], U.S. District Court for the District of Minnesota.

[15]  *See* Exhibit 11, Memorandum and Order entered 8/14/2025 in *Floribertha Mayo Anicasio, Petitioner v. Jerome Kramer, Lincoln County Sheriff, in his official capacity, et al.,* Case No. 4:-cv-031580JFB-RCC [CM/ECF Doc. 34 at 1, 3].

*Lincoln County Sheriff, in his official capacity, et al.,* Case No. 4:-cv-031580JFB-RCC [CM/ECF Doc. 34 at 1, 3].

48.      Also, in the Tacoma, Washington, immigration court, IJs previously stopped providing bond hearings for persons who entered the United States without inspection and who have since resided here, reasoning such people are subject to mandatory detention under § 1225(b)(2)(A). There, in granting preliminary injunctive relief, the U.S. District Court for the Western District of Washington found that such a reading of the INA is likely unlawful and that § 1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the United States. *Rodriguez Vazquez v. Bostock*, No. 3:25-CV-05240-TMC, --- F. Supp. 3d ---, 2025 WL 1193850 (W.D. Wash. Apr. 24, 2025);[16] *see also Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *8 (D. Mass. July 7, 2025) (granting habeas petition based on same conclusion); *Diaz Martinez v. Hyde*, No. CV 25-11613-BEM, --- F. Supp. 3d ---- 2025 WL 2084238, at *9 (D. Mass. July 24, 2025) (ordering release where noncitizen was redetained based on ICE's assertion of detention authority under § 1225(b)).

49.      DHS's interpretation defies the INA. As the *Rodriguez Vazquez* court and other courts explained, the plain text of the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like Plaintiffs.

50.      Section 1226(a) applies by default to all persons "pending a decision on whether the [noncitizen] is to be removed from the United States." These removal hearings are held under § 1229a, to "decid[e] the inadmissibility or deportability of a[] [noncitizen]."

51.      The text of § 1226 also explicitly applies to people charged as being inadmissible, including those who entered without inspection. *See* 8 U.S.C. § 1226(c)(1)(E). Just this year,

---

[16]  *See* Exhibit 12, Order entered 8/19/2025 in *Romero v. Hyde*, *et al.,* Case No. 1:25-cv-11631-BEM [CM/ECF Doc. 32], U.S. District Court for the District of Massachusetts.

Congress enacted subparagraph (E) in the Laken Riley Act to exclude certain noncitizens who entered without inspection from § 1226(a)'s default bond provision. Subparagraph (E)'s reference to persons inadmissible under § 1182(6)(A), i.e., persons inadmissible for entering without inspection, makes clear that, by default, such people are afforded a bond hearing under subsection (a). As the *Rodriguez Vazquez* court explained, "[w]hen Congress creates "specific exceptions" to a statute's applicability, it "proves" that absent those exceptions, the statute generally applies. *Rodriguez Vazquez*, 2025 WL 1193850, at \*12 (*citing Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400 (2010)). Section 1226 therefore leaves no doubt that it applies to people who face charges of being inadmissible to the United States, including those who are present without admission or parole.

52.        By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who very recently entered the United States. The statute's entire framework is premised on inspections at the border of people who are "seeking admission" to the United States. 8 U.S.C. § 1225(b)(2)(A); *see also Diaz Martinez*, 2025 WL 2084238, at \*8 ("'[O]ur immigration laws have long made a distinction between those [noncitizens] who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality.'" (*quoting Leng May Ma v. Barber,* 357 U.S. 185, 187 (1958))). Indeed, the Supreme Court has explained that this mandatory detention scheme applies "at the Nation's borders and ports of entry, where the Government must determine whether a[] [noncitizen] seeking to enter the country is admissible." *Jennings*, 583 at 287.

53.        Accordingly, the mandatory detention provision of § 1225(b)(2) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended. Because Petitioner has no criminal record, he was arrested and detained under Section 1226(a).

54.     Indeed, in 1997, after Congress amended the INA through the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), EOIR and the then-Immigration and Naturalization Service issued an interim rule to interpret and apply IIRIRA. Specifically, under the heading of "Apprehension, Custody, and Detention of [Noncitizens]," the agencies explained that "[d]espite being applicants for admission, [noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. at 10323 (emphasis added). The agencies thus made clear that individuals who had entered without inspection were eligible for consideration for bond and bond hearings before IJs under 8 U.S.C. § 1226 and its implementing regulations.

55.     Here, DHS actually charged Petitioner under Section 1226(a), as set forth in DHS's NTA.[17]

56.     DHS initially detained Petitioner without bond, but Petitioner then requested a bond redetermination hearing in front of an IJ.

57.     At the bond redetermination hearing on July 10, 2025 the IJ heard evidence and argument from both Petitioner and the DHS.

58.     Petitioner emphasized his strong ties to the community and submitted multiple letters of support from family and friends.[18]

59.     DHS did not argue that Petitioner is a flight risk nor danger to the community; rather DHS argued for the first time that Petitioner is subject to mandatory detention under 8 U.S.C.

---

[17]  See, Exhibit 1, Notice to Appear (NTA).

[18]  *See,* Exhibit 3 – Petitioner's Bond Hearing Exhibits.

§ 1225(b)(2)(A), which governs the inspection process for noncitizen "applicants for admission"— new arrivals to the country.[19]

60.     In accordance with decades of practice, the IJ rejected DHS's novel argument that Petitioner is subject to mandatory detention. The IJ also made specific findings of fact that Petitioner is not a danger or substantial flight risk and ordered Petitioner be released on $10,000.00 bond.

61.     DHS immediately filed a Form EOIR-43 "Notice of Intent to Appeal the Custody Redetermination," unilaterally triggering the automatic stay provision of 8 C.F.R. § 1003.19(i)(2). Filing that form blocked the IJ's order, at least for the pendency of the appeal to the BIA.

62.     In other words, DHS—the prosecutor—is not bound by the IJ's determination. The prosecutor disagreed with the IJ's decision and unilaterally overrode the order by filing a simple Form EOIR-43.

63.     Petitioner now remains in custody in contravention of the IJ's order.  DHS's appeal to the BIA will take months. And although regulations provide that the automatic stay will lapse in 90 days absent a BIA decision on the appeal, 8 C.F.R. § 100.36(c)(4), there are multiple avenues for extension. For example, if the BIA does not issue a decision in the 90-day window, DHS can then seek an additional discretionary stay from the BIA. 8 C.F.R. § 1003.6(c)(5). The automatic stay remains in effect for another 30 days while the BIA decides whether to grant a discretionary stay. Id.

64.     Meanwhile, Petitioner remains in custody and his conditions of confinement are indistinguishable from criminal incarceration: He is separated from family, housed in a facility with criminal defendants, and subject to "Alligator Alcatraz" Center's detention rules.

65.     Respondent's use of the automatic stay regulation is also an ultra vires regulation that unlawfully grants authority to DHS that Congress has delegated only to the Attorney General.

---

[19]  *See,* Exhibit 2 – Order Granting Bond.

66.    Here, an IJ has already determined that Petitioner does not pose a danger to persons or property if released and that a bond of $10,000.00 was sufficient to mitigate any risk of flight.

67.    Nonetheless, DHS appealed and invoked the automatic stay to prevent Petitioner's release on bond

68.    All issues have now been fully briefed at the Board Of Immigration Appeals (BIA) and therefore Petitioner has fully exhausted his administrative remedies.

## CLAIMS FOR RELIEF
### FIRST CLAIM FOR RELIEF
### Violation of Fifth Amendment – Substantive Due Process

69.    Petitioner realleges and incorporates herein the allegations contained in the preceding paragraphs of the petition as if fully set forth herein.

70.    The Due Process Clause of the Fifth Amendment forbids the government from depriving any "person" of liberty "without due process of law," including noncitizens. U.S. Const. amend. V.

71.    Substantive due process asks whether a person's life, liberty, or property is deprived without sufficient purpose. There is no question that Petitioner has been deprived of his liberty in this case.

72.    The government's continued detention of Petitioner is not supported by any special interest or compelling justification that outweighs his liberty interest.

73.    Petitioner's ongoing detention - when he has already been found by an IJ not to be a danger to persons or property and that a bond will mitigate any flight risk - constitutes prolonged detention.

### SECOND CLAIM FOR RELIEF
### Violation of Fifth Amendment Right - Procedural Due Process

74.     Petitioner realleges and incorporates herein the allegations contained in the preceding paragraphs of the petition as if fully set forth herein.

75.     The Due Process Clause of the Fifth Amendment guarantees Petitioner the right to procedural due process in seeking a bond redetermination and the government may not unreasonably restrict this right.

76.     The government's knowing misclassification of Petitioner as an "applicant for admission" under § 1225 in order to justify its argument for mandatory detention is not supported by any special interest or compelling justification that outweighs Petitioner's liberty interest.

77.     The government's invocation of the of the "automatic stay" set forth in 8 C.F.R. § 1003.19(i)(2) in order to detain Petitioner after an IJ found that he was not a danger to persons or property and that he could be released upon posting a $10,000 bond violates Petitioner's rights to procedural due process.

78.     The continued detention of Petitioner is not supported by any special interest or compelling justification that outweighs his liberty interest.

### THIRD CAUSE OF ACTION
**Violation of 8 U.S.C. § 1362 - Right to Counsel at Own Expense**
**And Due Process Clause of the Fifth Amendment**

79.     Petitioner realleges and incorporates herein the allegations contained in the preceding paragraphs of the petition as if fully set forth herein.

80.     8 U.S.C. § 1362 provides that "In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose. *See*

*also, Dakane v. United States Attorney General*, 399 F.3d 1269, 1273-1274 (11th Cir. 2005) ("It is well established in this Circuit that an alien in civil deportation proceedings, while not entitled to a Sixth Amendment right to counsel, has the constitutional right under the Fifth Amendment Due Process Clause right to a fundamentally fair hearing to effective assistance of counsel where counsel has been [re]tained.")

81.     The government is legally bound not to impede access to retained counsel for noncitizens.  Such actions clearly interfere with the due process of law under the Fifth Amendment due to noncitizens in deportation hearings.

82.     Here, since DHS transferred Petitioner to "Alligator Alcatraz,", he was able to meet with a legal assistant once on August 27, 2025 and Petitioner's counsel has only been able to have one telephone call with Petitioner on September 1, 2025.

## FOURTH CAUSE OF ACTION
### Ultra Vires Regulation

83.     Petitioner realleges and incorporates herein the allegations contained in the preceding paragraphs of the petition as if fully set forth herein.

84.     Congress gave the Attorney General authority to detain or release noncitizens, pending their removal proceedings. The Attorney General has delegated that authority to IJs.

85.     The automatic stay regulation, 8 C.F.R. § 1003.19(i)(2), purports to give DHS the authority to unilaterally override the IJ's decision on bond determinations. It is unlawful and ultra vires.

## PRAYER FOR RELIEF

**WHEREFORE** Petitioner Jose Ramon Gil-Paulino respectfully requests that the Court grant the following relief:

1) Assume jurisdiction over this matter;

2) Order the immediate release of Petitioner pending these proceedings, pursuant to the Court's inherent powers;

3) If Petitioner is not immediately released, order Respondents not to transfer Petitioner out of this District during the pendency of these proceedings, to preserve jurisdiction;

4) Order Respondents to accurately update the location of Petitioner to show that he is being held at Alligator Alcatraz in Respondent Immigration and Customs Enforcement's Online Detainee Locator System.

5) Declare that Petitioner's detention violates the Fifth Amendment and is ultra vires;

6) Issue a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and order Respondents to immediately release Petitioner from custody in accordance with the bond order from the IJ, or, in the alternative, order Respondents to show cause why this Petition should not be granted within three days;

7) Order that Respondents' actions violate Petitioner's right to counsel at his own expense under 8 U.S.C. § 1362 and his Fifth Amendment due process rights to consult and communicate with counsel, and further order that Respondents immediately arrange for telephonic, video and/or in-person meetings between Petitioner and his counsel;

8) Order Respondents to provide and ensure a method for timely and confidential legal exchange and signature between Petitioner and his counsel, including via fax, email, or electronic signature platform, courier service, and mail.

9) Award Petitioner reasonable attorneys' fees and costs; and

10) Grant any further relief the Court deems just and proper.

RESPECTFULLY SUBMITTED this 4th.  Day of September, 2025.


Alianza Americas USA.

By: */s/ Nera Shefer*

Nera Shefer

**Alianza Americas USA.**
8422 E. Shea Blvd #103
Scottsdale, Az 85260
Telephone: (786) 295-9077
Attorney for Respondent
EOIR# PH953919 Bar# 0814121
Nes@alianzasusa.com


## VERIFICATION PURSUANT TO 28 U.S.C. § 2242

I represent Petitioner, Jose Ramon Gil-Paulino and submit this verification on his  behalf. I hereby verify that the factual statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated this 4th. day of  September, 2025.

Alianza Americas, USA
By: */s/ Nera Shefer*
Nera Shefer

| LIST OF EXHIBITS | |
|---|---|
| **Exhibit 1** | **Notice to Appear (NTA).** |
| **Exhibit 2** | **Order Granting Bond.** |
| **Exhibit 3** | **Petitioner's Bond Hearing Exhibits.** |
| **Exhibit 4** | **Respondent's Bond Hearing Exhibits.** |
| **Exhibit 5** | **Form EOIR43 Stay of Release and Notice of Appeal to BIA** |
| **Exhibit 6** | **DHS Brief on Appeal.** |
| **Exhibit 7** | **Petitioner's Motion To Lift Automatic Stay.** |
| **Exhibit 8** | **Petitioner's Response Brief on Appeal.** |
| **Exhibit 9** | **Temporary Restraining Order entered 7/28/2025 in *Lazaro Maldonado Bautista et al. v. Santacruz, Jr.*** |
| **Exhibit 10** | **Restraining Order entered 8/29/2025 in *Francisco T. v. Bondi, et al.,* Case No. 0:25-cv-03219-JMB-DTS, [CM/ECF Doc. 17], U.S. District Court for the District of Minnesota.** |
| **Exhibit 11** | **Memorandum and Order entered 8/14/2025 in *Floribertha Mayo Anicasio, Petitioner v. Jerome Kramer, Lincoln County Sheriff, in his official capacity, et al.,* Case No. 4:-cv-031580JFB-RCC [CM/ECF Doc. 34 at 1, 3].** |
| **Exhibit 12** | **Order entered 8/19/2025 in *Romero v. Hyde, et al.,* Case No. 1:25-cv-11631-BEM [CM/ECF Doc. 32], U.S. District Court for the District of Massachusetts.** |