**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 25-24292-CV-WILLIAMS**

JOSE RAMON GIL-PAULINO,

    Petitioner,

v.

SECRETARY OF THE DEPARTMENT OF
HOMELAND SECURITY, *et al.*,

    Respondents.
_____/

## ORDER

**THIS MATTER** is before the Court on Petitioner's Motion for Temporary Restraining Order ("***TRO Motion***") (DE 15). The Court heard oral argument on October 8, 2025 (DE 37; DE 40). For the reasons set out during the hearing and as discussed below, Petitioner's TRO Motion (DE 15) is **GRANTED.**

### I.  FACTUAL BACKGROUND

Petitioner Jose Ramon Gil-Paulino ("***Petitioner***") is a forty-nine-year-old citizen of the Dominican Republic who has resided in the United States since 2016. (DE 14 ¶ 10; DE 14-6 at 2). On May 20, 2025, Petitioner was arrested in San Juan, Puerto Rico by United States Immigration and Customs Enforcement ("***ICE***") agents. (DE 14 ¶ 19). That same day, the Department of Homeland Security ("***DHS***") issued a notice to appear ("***NTA***"), charging Petitioner with inadmissibility under sections 212(a)(6)(A)(i) and 212(a)(7)(B)(i)(II) of the Immigration and Nationality Act ("***INA***") as "an alien present in the United States who has not been admitted or paroled." (*Id*; DE 14-1). DHS thereby commenced removal proceedings against Petitioner under 8 U.S.C. § 1229(a). (DE 14-1).

Petitioner was initially detained at the Florence Detention Center in Florence, Arizona. (DE 14 ¶ 20). On July 10, 2025, following a bond hearing, an immigration law judge ("*ILJ*") orally ordered Petitioner released upon the posting of a $10,000 bond. (*Id.* ¶¶ 21–22). DHS immediately appealed the bond decision, which triggered the automatic stay provision pursuant to 8 C.F.R. § 1003.19(i)(2). (*Id.* ¶ 22). On July 28, 2025, the ILJ issued its written decision. (*Id.* ¶ 23). The ILJ concluded that Petitioner presented neither a danger to the community nor a flight risk, and ordered Petitioner released on a $10,000 bond. (DE 14-2). The ILJ further determined that Petitioner was not an "applicant for admission," and therefore his detention was governed by 8 U.S.C. § 1226 and not 8 U.S.C. § 1225. (*Id.*)

On July 29, 2025, Petitioner posted bond and was released from custody. (DE 14 ¶ 26). He reunited with his fiancée in San Juan, Puerto Rico. (*Id.*) On August 5, 2025, Petitioner filed a motion to change venue, requesting that his removal proceedings be transferred from Arizona to Puerto Rico. (*Id.* ¶ 28). Shortly thereafter, Petitioner was re-arrested and transferred back into ICE custody. (*Id.*)

On September 4, 2025, Petitioner filed a habeas petition in the Southern District of Florida. (DE 1). On September 5, 2025, the case was transferred to the Middle District of Florida on the basis that Petitioner was detained in that district. (DE 4). On September 10, 2025, Petitioner was then relocated to Krome North Processing Center in Miami, Florida. (DE 14 at 2–3). Accordingly, On September 19, 2025, the case was transferred back to this district (DE 11) and assigned to the Undersigned (DE 12). That same day, the Board of Immigration Appeals ("*BIA*") vacated the ILJ's bond decision and concluded that Petitioner was detained pursuant to 8 U.S.C. § 1225, rather than 8 U.S.C. § 1226. (DE

22-2). On September 20, 2025, Petitioner filed the instant TRO Motion, seeking immediate release, and arguing that the BIA's interpretation of his detention is contrary to statute and precedent. (DE 15).

## II.      DISCUSSION

### A. *Jurisdiction*

The Court first considers whether it has jurisdiction. The Government argues that the Court lacks jurisdiction under 8 U.S.C. § 1226(e) and 8 U.S.C. § 1252(g). Each statute is addressed in turn.

#### i.      8 U.S.C. § 1226(e)

Congress has limited federal courts' authority to review the Attorney General's "discretionary judgment" regarding bond decisions. *See* 8 U.S.C. § 1226(e). Were Petitioner challenging his bond, the Court would indeed lack jurisdiction. *See United States v. Velasquez Velasquez*, 524 F.3d 1248, 1252–53 (11th Cir. 2008) (district court lacked jurisdiction to alter the immigration judge's decision to release noncitizen defendant on bond pending immigration proceedings); *Mayorga v. Meade*, No. 24-cv-22131, 2024 WL 4298815, at *7 (S.D. Fla. Sept. 26, 2024) ("decision to deny Petitioner bond [was] purely discretionary pursuant to § 1226 and beyond the jurisdiction of th[e] [District] Court.").

But Petitioner's claim is narrower. He does not ask the Court to review or alter the immigration judge's bond. Rather, he challenges whether he is detained under the correct statutory provision. This is a pure question of law. Accordingly, § 1226(e) does not bar jurisdiction. *See Jennings*, 583 U.S. at 295 ("As we have previously explained, § 1226(e) precludes an alien from challenging a discretionary judgment by the Attorney or a decision

that the Attorney General has made regarding his detention," however, it "does not preclude challenges to the statutory framework that permits the alien's detention[.]") (cleaned up); *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL 2676082, at *9 (D. Nev. Sept. 17, 2025) ("Because Petitioner challenges the extent to which Respondents' new detention policy is authorized under the INA, § 1226(e) does not bar review."); *Leal-Hernandez v. Noem*, No. 25-cv-02428, 2025 WL 2430025, at *7 (D. Md. Aug. 24, 2025) (petitioner's challenge to the "Government's use of its regulatory framework" did not preclude court's jurisdiction under § 1226(e)"); *Lopez-Arevelo v. Ripa*, No. 25-cv-337, 2025 WL 2691828, at *5 (W.D. Tex. Sept. 22, 2025) (rejecting respondent's § 1226 argument and concluding that court had jurisdiction over the merits of petitioner's constitutional claim); *Casun v. Hyde*, No. 25-cv-427, 2025 WL 2806769, at *2 (D.R.I. Oct. 2, 2025) ("[Petitioner] is not disputing the discretionary judgment exercised by the Immigration Judge. He is contesting his statutory eligibility to be detained.").

**ii.     8 U.S.C. § 1252(g)**

Respondents next contend that § 1252(g) precludes the Court from exercising jurisdiction. Section 1252 is "Congress's comprehensive scheme for judicial review of removal orders." *Canal A Media Holding, LLC v. United States Citizenship and Immigr. Servs.*, 964 F.3d 1250, 1256–57 (11th Cir. 2020). It bars judicial review over "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien[.]" 28 U.S.C. § 1252(g). It "is specifically directed at the deconstruction, fragmentation, and hence prolongation of removal proceedings." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 487 (1999). "1252(g) is not to be construed

broadly as a 'zipper' clause applying to the full universe of deportation-related claims, but instead as applying narrowly to only the three 'discrete' governmental actions enumerated in that subsection." *Wallace v. Sec'y, United States Dep't of Homeland Sec.*, 616 F. App'x 958, 960 (11th Cir. 2015) (citing *A.A.D.C.*, 525 U.S. at 472–73). "And although many other decisions or actions may be part of the deportation process, only claims that arise from one of the covered actions are excluded from [a court's] review. . . ." *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021) (internal citations and quotations omitted).

Here, the Government's § 1252(g) argument is unpersuasive. Petitioner's claim does not implicate the Attorney General's decision to commence proceedings, adjudicate cases, or execute removal orders. Rather, Petitioner challenges the legality of his detention. That claim is reviewable. *See Canal A Media Holding, LLC*, 946 F.3d at 1257–58 (claim was not barred by § 1252(g) where action did not fall into one of three categories as "[w]hen asking if a claim is barred by § 1252(g), courts must focus on the action being challenged."); *Maldonado*, 2025 WL 2374411, at *6 (petitioner's due process challenge was not barred by § 1252(g) as it did not "challenge the actions of Respondents in commencing proceedings, adjudicating cases, or executing removal orders."); *Vazquez*, 2025 WL 2676082, at *8 ("[B]ecause Petitioner challenges the lawfulness of his detention during the pendency of his removal proceedings, it is not a challenge to one of the 'three discrete events along the road to deportation' that § 1252(g) applies to."); *Leal-Hernandez*, 2025 WL 2430025, at *5 ("Petition[er] mounts a challenge solely to his continued custody. None of the cases the Government relies on pertain to cases in which a petitioner . . . pursued judicial review of his allegedly unconstitutional custody. In

accordance with Supreme Court precedent and the plain language of the text, § 1252(g) does not bar [jurisdiction]."); *Sanchez v. LaRose*, No. 25-cv-2396, 2025 WL 2770629, at *2 (S.D. Cal. Sept. 26, 2025) ("Petitioner seeks only review of the legality of her detention, which does not require judicial intervention into the Attorney General's decisions to commence proceedings, adjudicate cases, and execute removal orders. . . . Adopting [the government's] interpretation of 8 U.S.C. § 1252(g) . . . would eliminate judicial review of immigration detainee's claims of unlawful detention[.]"); *Campos Leon v. Forestal*, No. 25-cv-01774, 2025 WL 2694763, at *1–2 (rejecting respondents' § 1252(g) argument and concluding that the court had jurisdiction to hear habeas petition challenging DHS' refusal to abide by the immigration judge's bond order). Thus, because Petitioner's claim does not arise from one of the three actions enumerated in § 1226, the Court has jurisdiction. Having established jurisdiction, the Court now turns to the relevant immigration statutes at issue here.

## B. *Relevant Immigration Statutes*

Two statutes principally govern the detention of noncitizens: 8 U.S.C. §§ 1225 and 1226. The Court begins by addressing these.

### i. 8 U.S.C. § 1225

Section 1225 governs the inspection, detention, and removal of applicants for admission. *See* 8 U.S.C. § 1225 *et seq*. Applicants for admission are defined as noncitizens "present in the United States who ha[ve] not been admitted" or those "arriv[ing] in the United States." *Id.* All applicants for admission "must be inspected by immigration officers to ensure that they may be admitted into the country consistent with

U.S. immigration law." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).[1] To that end, "U.S. immigration law authorizes the Government to detain certain aliens *seeking admission* into the country under §§ 1225(b)(1) and (b)(2)." *Id.* at 289 (emphasis added).

Moreover, "Section 1225(b)(1) applies to all aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* Such non-citizens are generally subject to expedited removal "without further hearing or review." 8 U.S.C. § 1225(b)(1). However, if the non-citizen expresses "an intention to apply for asylum" or a fear of persecution," the statute requires referral to an interview with an immigration officer. *Id.* § 1225(b)(1)(A)(ii). If the immigration officer finds a "credible fear," the non-citizen "shall be detained for further consideration of the application for asylum." *Id.* On the other hand, "Section 1225(b)(2) is broader" and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings*, 583 U.S. at 287. Non-citizens covered under § 1225(b)(2) are detained for removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted" into the country. 8 U.S.C. § 1225(b)(2)(A). Importantly, detention under § 1225(b)(2) is mandatory. *See Gomes v. Hyde*, No. 25-cv-11571, 2025 WL 1869299, at *8 (D. Mass. July 7, 2025).

   ii.   **8 U.S.C. § 1226**

Federal immigration law "also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Jennings*, 583 U.S.

---

[1] Indeed, *Jennings* began its analysis by emphasizing the temporal and categorical distinction between the detention statutes. Section 1225 applies to noncitizens who are "seeking admission into the country" at the border or a port of entry, whereas § 1226 governs those "already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 285–89.

at 289 (emphasis added). Section 1226(a) provides that when a noncitizen has been "arrested and detained pending a decision on whether the alien is to be removed from the United States," the Attorney General may either continue to detain the individual or release them on bond or conditional release. *See* 8 U.S.C. § 1226(a). The statute thus "establishes a discretionary detention framework." *Gomes*, 2025 WL 1869299, at *2. With this background in mind, the Court now analyzes the merits of Petitioner's request for a TRO.

### C. *Temporary Restraining Order*

Rule 65 of the Federal Rules of Civil Procedure authorizes courts to grant a preliminary injunction or temporary restraining order before final judgment in limited circumstances. The purpose of this injunctive relief is to "preserve the status quo until the [Court] renders a meaningful decision on the merits." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir. 2005). The primary difference between a preliminary injunction and a TRO is that a TRO "may be entered before the [respondent] has an adequate opportunity to respond." *Dragados USA, Inc. v. Oldcastle Infrastructure, Inc.*, No. 20-cv-20601, 2020 WL 733037, at *2 (S.D. Fla. Feb. 13, 2020). As such, the duration of a TRO is limited to fourteen days, absent an extension for good cause. Fed. R. Civ. P. 65(b)(2).

> To merit a TRO, as with a preliminary injunction, Petitioner must show:
>
> (1) a substantial likelihood of success on the merits; (2) that the [TRO] is necessary to prevent irreparable injury; (3) that the threatened injury outweighs the harm the [TRO] would cause the other litigant; and (4) that the [TRO] would not be averse to the public interest.

*Gissendaner v. Comm'r, Ga. Dept. of Corr.*, 779 F.3d 1275, 1280 (11th Cir. 2015) (quoting *Wellons v. Comm'r, Ga. Dept. of Corr.*, 754 F.3d 1260, 1263 (11th Cir. 2014)); *see also*

*Windsor v. United States*, 379 F. App'x 912, 916–17 (11th Cir. 2010) (explaining that "the four criteria for obtaining a preliminary injunction are identical to those for issuance of a temporary restraining order").

### i. Probability of Success on the Merits

Petitioner has demonstrated a strong likelihood of success on the merits of his claim that he is being unlawfully detained under § 1225(b)(2)'s mandatory detention scheme. As a threshold matter, this Court has jurisdiction to determine which statute governs Petitioner's detention. *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) ("[This case] requires the Court to decide whether § 1226(a) or § 1225(b)(2)(A) applies to [Petitioner]. To answer the question, the Court must determine how the two sections interplay with one another. . . . Ultimately, the issue boils down to a matter of statutory interpretation. And matters of statutory interpretation belong historically within the province of the courts.") (citing *Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 386 (2024)); *Barrios v. Shepley*, No. 25-cv-00406, 2025 WL 2772579, at *5 (D. Maine Sept. 25, 2025) (district court had jurisdiction to review petitioner's challenge to the "statutory framework" regarding his detention); *See Gomes*, 2025 WL 1869299, at *8 n.9 ("[T]o the extent . . . the BIA would conclude that Gomes is subject to mandatory detention under Section 1225(b)(2), this Court respectfully disagrees with that conclusion. Courts must exercise independent judgment in determining the meaning of statutory provisions").

From the outset, DHS itself proceeded under § 1226. Petitioner's Notice to Appear did not classify him as an "arriving alien." Instead, it charged him as "present in the United States without admission or parole." That classification is dispositive. *See e.g., Pizarro*

*Reyes*, 2025 WL 2609425, at *8 (emphasizing ICE's selection of "present" rather than "arriving" on the notice to appear as evidence that § 1226 applied); *see also Perez v. Berg*, No. 25-cv-494, 2025 WL 2531566, at *2 (D. Neb. July 24, 2025) ("The Court notes that the government itself charged Petitioner as an alien present in the United States who has not been admitted or paroled rather than an arriving alien.") (quotations omitted).

Here, the immigration judge accordingly exercised its authority under § 1226(a) to grant bond and release Petitioner. *See* DE 14-2 (bond decision). In doing so, the immigration explicitly rejected the Government's argument that § 1225 applied:

> The Department argues that the Respondent is subject to mandatory detention under INA section 235(a). However, no facts or evidence have been presented by either party to establish that the Respondent falls under the Board's ruling in Matter of Q. Li, 26 I&N Dec. 66 (BIA 2025), because he was not apprehended arriving in the United States. Rather the Respondent was detained after being present in the United States for longer than two years. Therefore, the Respondent is properly detained under INA section 236(a), and has never been detained under INA section 235. See also INA section 235(b)(1)(A)(iii)(II).

The BIA's subsequent reversal of this decision, treating Petitioner as subject to mandatory detention under § 1225, directly contravenes the statute, disregards decades of settled precedent, and conflicts with the immigration judge's explicit findings. Courts nationwide have uniformly rejected the Government's expansive reading of § 1225. *See Pizarro Reyes*, 2025 WL 2609425, at *7 ("Finally, the BIA's decision to pivot from three decades of consistent statutory interpretation and call for Pizarro Reyes' detention under § 1225(b)(2)(A) is at odds with every District Court that has been confronted with the same question of statutory interpretation."); *see also Lopez v. Hardin*, No. 25-cv-830, 2025 WL 2732717, at *2 (M.D. Fla. Sept. 25, 2025); *Belsai D.S. v. Bondi*, No. 25-cv-3682, 2025 U.S. Dist. LEXIS 194262, at *12–17 (D. Minn. Oct. 1, 2025); *Silva v. United States Immigr. & Customs Enf't*, No. 25-cv-284, 2025 U.S. Dist. LEXIS 191101, at *6–7 (D.N.H.

Sept. 29, 2025); *Barrios v. Shepley*, No. 25-cv-00406, 2025 WL 2772579, at *10 (D. Maine Sept. 29, 2025); *Chogllo Chafla v. Scott*, Nos. 25-cv-00437, 25-cv-00438, 25-cv-00439, 2025 WL 2688541, at *6–9 (D. Maine Sept. 22, 2025); *Salcedo Aceros v. Kaiser*, No. 25-cv-06924, 2025 WL 2637503, at *8–12 (N.D. Cal. Sept. 12, 2025); *Lopez Santos v. Noem*, No. 3:25-cv-01193, 2025 WL 2642278, at *3–5 (W.D. La. Sept. 11, 2025); *Jimenez v. FCI Berlin*, No. 25-cv-326, 2025 U.S. Dist. LEXIS 1276165, at *9–16 (D.N.H. Sept. 8, 2025); *Garcia v. Noem*, No. 25-cv-01180, 2025 WL 2549431, at *5–7 (S.D. Cal. Sept 3, 2025); *Francisco v. Bondi*, No. 25-cv-03219, 2025 WL 2629839, at *2–4 (D. Minn. Aug. 29, 2025); *Lopez-Campos v. Raycroft*, No. 25-cv-12486, 2025 WL 2496379, at *5–8 (E.D. Mich. Aug. 29, 2025); *Diaz v. Mattivelo*, No. 25-cv-12226, 2025 WL 2457610, at *3 (D. Mass. Aug. 27, 2025); *Kostak v. Trump*, No. 25-1093, 2025 WL 2472136, at *2–3 (W.D. La. Aug. 27, 2025); *Benitez v. Noem*, No. 25-cv-02190, 2025 U.S. Dist. LEXIS 171945, at *8–12 (C.D. Cal. Aug. 25, 2025); *Romero v. Hyde*, No. 25-11631, 2025 WL 2403827, at *11–13 (D. Mass. Aug. 19, 2025); *Maldonado v. Olson*, No. 25-cv-3142, 2025 WL 2374411, at *11–12 (D. Minn. Aug. 15, 2025); *dos Santos v. Noem*, 25-cv-12052, 2025 WL 2370988, at *6–8 (D. Mass. Aug. 14, 2025); *Lopez Benitez v. Francis*, No. 25-cv-5937, 2025 WL 2371588, at *4–9 (S.D.N.Y. Aug. 13, 2025); *Rosado v. Figueroa*, No. 25-12157, 2025 WL 2337099, at *6–11 (D. Ariz. Aug. 11, 2025) *report and recommendation adopted by*, 2025 WL 2349133 (Aug. 13, 2025); *Bautista v. Santacruz*, No. 25-cv-01873, 2025 U.S. Dist. LEXIS 171364, at *13–16 (C.D. Cal. July 28, 2025); *Martinez v. Hyde*, No. 25-11613, 2025 WL 2084238, at *5–9 (D. Mass. July 24, 2025); *Gomes*, 2025 WL 1869299, at *5–8; *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1256–61 (W.D. Wash. 2025). Indeed, the Government conceded at the hearing that no district court has upheld its position.

Accordingly, the Court concludes that § 1226 governs Petitioner's detention. Because the BIA's decision to apply § 1225 and revoke bond rested on an incorrect statutory interpretation, Petitioner is likely to succeed on his claim that his detention is unlawful.

### ii.     Threat of Irreparable Harm

The Court next considers whether Petitioner has demonstrated that, absent the requested relief, he will suffer irreparable harm. That Court concludes that he has. "To demonstrate irreparable harm, a movant must show 'that the injury cannot be undone through monetary remedies.'" *Gayle v. Meade*, 614 F. Supp. 3d 1175, 1205 (S.D. Fla. 2020) (citation omitted). "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Id.*

Here, Petitioner challenges his ongoing detention as unlawful and in violation of his due process rights. Because Petitioner alleges a violation of his right to liberty under the Fifth Amendment, "no further showing of irreparable injury is necessary." *Gayle*, 614 F. Supp. At 1205; *Snipes v. Scott*, No. 18-cv-580, 2019 WL 163352, at *5 (N.D. Fla. Jan. 10, 2019) ("When an alleged deprivation of a constitutional right is involved . . . most courts hold that no further showing of irreparable injury is necessary.").

Even if a further showing were required, Petitioner has presented uncontested evidence of his unique harms. He suffers from a severe knee condition for which he has not received proper medical care. *See* (DE 20-2 ¶¶ 10, 18, 23). His detention has also caused emotional and financial hardship: his fiancée, with whom he co-owns a restaurant in Puerto Rico, has struggled to operate it alone, and the restaurant's profits have dropped by more than fifty percent. (*Id.* ¶¶ 30–31). Petitioner also describes the unsafe and

unsanitary detention conditions, including lack of "potable water," and overcrowding. (*Id.* ¶¶ 10–12, 20–22). Together, these facts demonstrate irreparable harm. *See Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (recognizing "the irreparable harms imposed on anyone subject to immigration detention" including "subpar medical and psychiatric care in ICE detention facilities" and "the economic burdens imposed on detainees and their families as a result of detention").

### iii. Balance of Equities and Public Interest

The final two TRO factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Both weigh in favor of Petitioner.

"It is always in the public interest to prevent the violation of a party's constitutional rights." *Simms v. Dist. of Columbia*, 872 F. Supp. 2d 90, 105 (D.D.C. July 6, 2012). Similarly, "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016); *see also Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1327 (11th Cir. 2019) ("And the public interest is served when constitutional rights are protected."). To the contrary, the Government identifies no legitimate harm that would result from its compliance with the law. "Indeed, there is no harm to the Government from engaging in unlawful practices." *Gayle*, 614 F. Supp. 3d at 1206.

Because neither equity nor public interest are served by dispensing with decades of settled precedent or by detaining noncitizens beyond what Congress explicitly authorized, the last two factors weigh in favor of granting the TRO. *See Lopez*, 2025 WL 2732717, at *3 ("[B]ecause [petitioner] is arguably detained unlawfully under § 1225(b)(2), neither equity nor the public's interest are furthered by holding him."); *Galvez v. Jaddou*,

52 F.4th 821, 832 (9th Cir. 2022) ("It is clear that neither equity nor the public's interest are furthered by allowing violations of federal law to continue."); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 33 (1st Cir. 2021) (emphasizing that "unnecessary [immigration] detention imposes substantial societal costs.").

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Petitioner's Motion for Temporary Restraining Order (DE 15) is **GRANTED**.
2. Respondents shall immediately release Petitioner Jose Ramon Gil-Paulino upon his re-posting of the bond previously set by the immigration law judge, with no additional conditions beyond those imposed at the bond redetermination hearing on July 10, 2025.
3. Respondents shall file a notice with the Court within 48 hours confirming Petitioner's release in compliance with this Order.

**DONE AND ORDERED** in Chambers in Miami, Florida, this <u>10th</u> day of October, 2025.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE